IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULINE VICTORIA WATERFIELD,

        Plaintiff,

v.                                          CIV 18-0515 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 15*) filed on November 20, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3, 5, 6.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

On September 19, 2014, Ms. Pauline Waterfield (Plaintiff) protectively filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income under Title XVI of the SSA. Administrative Record[1] (AR) at 218-25. Plaintiff alleged a disability onset date of September 3, 2014. AR at 218, 224.

---

[1] Document 10-1 contains the sealed Administrative Record. *See Doc. 10-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 78-79) and on reconsideration (AR at 128-29). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her applications. AR at 146-48.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 32-77. ALJ Lillian Richter issued an unfavorable decision on June 1, 2017. AR at 7-31. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 214-15), which the Council denied on April 2, 2018 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of

the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Richter found that Plaintiff "has not engaged in substantial gainful activity since September 3, 2014, the alleged onset date." AR at 12 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine with spondylosis, radiculitis, degenerative disc disease of the thoracic spine, and depression." AR at 12 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted that Plaintiff "has been diagnosed with [several] medically determinable impairments, which

---

[2] ALJ Richter first found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2019." AR at 12.

[the ALJ] found to be non-severe: constipation, gastroesophageal reflux disorder, H. pylori infection, and a left lower extremity soft tissue injury." AR at 13.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 13 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms[,]" the ALJ did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 17. The ALJ considered the evidence of record and found that Plaintiff

> has the residual functional capacity to perform a limited range of sedentary work . . . . She can lift, carry, push, and/or pull 10 pounds occasionally and 5 pounds frequently; stand and/or walk 2 hours total and sit 6 hours total during an 8 hour day; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. [She] can never be exposed to unprotected heights. [She] cannot operate foot controls with the left lower extremity. [She] should avoid exposure to extreme cold, vibration or hazardous machinery. [She] is limited to simple, routine, and repetitive work and can have occasional interaction with members of the public. [She] is limited to a workplace with few changes in the routine work setting.

AR at 16. ALJ Richter found that Plaintiff "is unable to perform any past relevant work." AR at 23 (citing 20 C.F.R. §§ 404.1565, 416.965). Instead, Plaintiff may perform the positions of table worker, inspector, and circuit board inspector. AR at 24. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the

Social Security Act, from September 3, 2014, through the date of [the ALJ's] decision." AR at 24 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.   Discussion

Plaintiff brings a sweeping range of issues for the Court's consideration. She argues that the ALJ erroneously: (1) rejected the opinion of Dr. Dianna L. Fury, M.D. (*Doc. 15* at 9-12); (2) rejected the opinion of Ms. Rebecca Frock, M.A., LPCC (*id.* at 13-15); (3) relied on Plaintiff's alleged failure to seek treatment in discounting her allegations of her symptoms (*id.* at 15-17); (4) weighed an opinion from Dr. Susan Flynn, Ph.D. (*id.* at 17-19); (5) rejected one of Dr. J. Tendler, M.D.'s opined moderate limitations (*id.* at 20); (6) assessed Plaintiff's subjective symptoms (*id.* at 21-22); (7) failed to clarify the VE's testimony (*id.* at 23-24); and (8) failed to make a significance determination regarding the number of jobs available in the national economy (*id.* at 24-25). The Court will examine each argument below.

### A.   Dr. Fury

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physician, Dr. Fury. *Id.* at 9-12. Dr. Fury began treating Plaintiff for back pain September 22, 2014.[3] AR at 431-33. Plaintiff visited Dr. Fury a total of seven times for back pain and/or depression from September 2014 through September 2016 (*see* AR at 431-33 (Sept. 22, 2014), 428-29 (Oct. 1, 2014), 425-27 (Oct. 14, 2014), 456-58 (Dec. 17, 2014), 452-54 (Dec. 31, 2014), 565-68 (Mar. 9, 2015), 561-64 (Sept. 18, 2015)), and one time in 2016 for a complaint of hip pain (*see* AR at 616-19 (Sept. 27, 2016)). The record

---

[3] Dr. Fury saw Plaintiff one time prior, on January 14, 2014, to examine a lump in her breast, but Plaintiff did not complain of back pain or depression at that appointment. *See* AR at 434-35.

contains a December 17, 2014 Medical Source Statement of Ability to do Work-Related Activities for Social Security Disability (AR at 446-48), a November 6, 2016 Physician's Certification (AR at 646), a November 18, 2016 letter (AR at 647), and a March 25, 2015 letter (AR at 163) from Dr. Fury.

In the December 17, 2014 Medical Source Statement, Dr. Fury opined that Plaintiff is limited to lifting or carrying less than ten pounds occasionally or frequently due to her lumbar radiculopathy and degenerative disc disease in her lower back; she "needs to be able to move frequently from sitting to standing and can walk short distances at a time"; she can stand, walk, and/or sit less than two hours in an eight-hour day because of "9 pain [with] any position that she is in [more than two hours]"; both overhead reaching and traveling are limited secondary to pain; and she has non-exertional issues ("chronic neuropathic pain present at all times") that would affect her ability to work full-time. AR at 446-47. Dr. Fury opined that Plaintiff would be unable to perform full-time work "at this time," and was limited to working less than 50% of the time. AR at 448.

The November 6, 2016 statement is part of a Physician's Certification on an application "for a discharge of a federal student loan . . . ." AR at 646. Dr. Fury completed a section entitled "Disabling Condition," noting "(1) low back pain, (2) [a t]ear in disk at L5-S1, radicular pain" and stating that Plaintiff "has severe pain in lower back [and] going down legs most days." AR at 646. She wrote that Plaintiff "can only sit or stand at very short intervals"; "[t]akes several hours to shower/dress because [of] pain"; and "[i]s in pain daily [and] difficult to be in any social situations for long periods of time." AR at 646.

Dr. Fury wrote a letter on November 18, 2016, and stated that Plaintiff:

> has had more pain recently and is not able to complete any task in a short time period. This includes [activities of daily living] and she told me that it took her several hours to ready herself to come in for a doctor appointment recently. She would not be able to work in any capacity at all and is not able to take care of her home either. Her most recent MRI did have a new finding of a tear in one of her disks in the lumbar region. Because I am not an orthopedic specialist, I do not know how much this affects her pain and ability to move. I also do not know what this means in the future for her pain and ability to move.

AR at 647. Dr. Fury's March 25, 2015 letter was similar, but shorter: Plaintiff "is not able to work at all and is getting disability but unsure when. She has a back injury that is r on [sic] healing and will not be working. She needs to continue her medical benefits because of this." AR at 163.

ALJ Richter declined to give Dr. Fury's opinion controlling weight and instead gave it "little weight" for a variety of reasons. *See* AR at 20-21. Plaintiff contends that the ALJ's analysis under 20 C.F.R. § 404.1527 was flawed. *Doc. 15* at 9-12.

When analyzing an opinion from a claimant's treating physician, an "ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

*Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotations omitted) (alterations in original)). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Krauser*, 638 F.3d at 1330. However, "[e]ven if a treating opinion is not given

controlling weight, it is still entitled to deference . . . ." *Id.* The ALJ "must make clear how much weight the opinion is being given . . . and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* When weighing the opinion, the ALJ considers "all of the factors provided in 20 C.F.R. § 404.1527[,]" which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (internal quotations omitted)).

Here, Plaintiff argues with the ALJ's choice to give Dr. Fury's opinions little weight. The Court finds, however, that the ALJ adequately evaluated Dr. Fury's opinion at the second step of the analysis.

With respect to the first, second, and fifth factors, ALJ Richter noted that Plaintiff sought care from Dr. Fury, her primary care provider, "infrequently" over a two-year period. AR at 20. The ALJ also emphasized that Dr. Fury was "not an orthopedic specialist, as she herself notes." AR at 20 (citing AR at 647). Plaintiff incorrectly asserts that "the ALJ omitted *any* reference to the eight office visits from September 2014 through September 2015 during which Dr. Fury treated [her] for either back pain or depression . . . ." *See Doc. 15* at 12. The Court notes that Plaintiff visited Dr. Fury *seven* times between September 2014 and September 2015; Plaintiff incorrectly asserts that

she saw Dr. Fury for back pain on December 16, 2014, but she actually visited Dr. Douglas Barrett, M.D., on that date. *See Doc. 15* at 5 (citing AR at 459-61). Moreover, the ALJ specifically discussed five of the seven visits with Dr. Fury. *See* AR at 17 (discussing the Sept. 22, 2014 visit), 18 (discussing the Dec. 31, 2014, Mar. 9, 2015, and Sept. 18, 2015 visits), and 21 (discussing the Oct. 14, 2014 visit).

Plaintiff also quibbles with the ALJ's characterization of her visits as "infrequent." *See Doc. 18* at 2. She contends that the Tenth Circuit has found eleven visits with a physician's assistant in almost three years is "consistent" treatment. *Id.* (citing *Kellams v. Berryhill*, 696 F. App'x 909 (10th Cir. 2017)). The Tenth Circuit made no such finding. Instead, the court found that the ALJ improperly evaluated evidence from the physician's assistant who "had the longest treatment relationship of any provider, with the most frequent interactions." *Id.* at 919. "Duration, frequency, and consistency are all relevant factors under SSR 06-03p." *Id.* at 919-20. In this case, the Court is inclined to agree with the ALJ's statement that Plaintiff's visits with Dr. Fury were infrequent, particularly where three of these seven visits occurred within weeks of her application for disability benefits. Regardless, as discussed below, the ALJ's remaining reasons for discounting Dr. Fury's opinion were sufficient and supported by substantial evidence, notwithstanding how she characterized the frequency of the visits with Dr. Fury.

With respect to the third and fourth factors, the ALJ found that Dr. Fury's opinions are "not well supported by medically acceptable clinical and laboratory diagnostic techniques and" are "inconsistent with other substantial evidence in the case record." AR at 20 (citations omitted). More specifically, the ALJ found that "the severe limitations Dr. Fury indicates . . . are out of proportion to the generally unremarkable clinical

findings she reports in her treatment notes." AR at 20. She further found that "Dr. Fury's limitations appear to be a restatement of [Plaintiff's] own report of her limitations, as Dr. Fury provides no clinical findings to support the limitations." *Id.* at 21.

Plaintiff asserts that the ALJ "failed to reference any of the objective findings in Dr. Fury's progress notes." *Doc. 15* at 11. Plaintiff references a September 2014 MRI, which "revealed small central disc protrusions." *Id.* (citing AR at 444). The ALJ cited to this finding earlier in her decision. AR at 17 (citing AR at 444). Plaintiff argues that the ALJ failed to mention Plaintiff's complaints "of lower back pain that is aching, burning, and radiating to the left thigh" in October 2014 (*Doc. 15* at 10-11 – citing AR at 425-26), and complaints of left hip pain with "clicking, decreased mobility, limping, locking, and stiffness" in September 2016 (*id.* at 11 – citing AR at 616-19). Yet, these are both examples of Plaintiff's own subjective complaints, which the ALJ found formed the basis of many of Dr. Fury's findings. More importantly, the ALJ addressed Plaintiff's allegations of "a high degree of back pain that [are] not consistent with the very conservative treatment she has received." AR at 19. The ALJ thoroughly summarized this conservative treatment record, including the fact that Dr. James Santos, M.D. (an orthopedic specialist) and Dr. Barrett (a neurologist) found no "acute problem[s]" after each examined, ordered tests for, and treated Plaintiff. *See* AR at 19; *see also* AR at 18-19 (summarizing Plaintiff's treatment records with Drs. Santos and Barrett). Plaintiff has not alleged error with the ALJ's treatment of either Dr. Santos or Dr. Barrett.

Plaintiff argues that the ALJ "failed to discuss the significance of Dr. Fury's findings of muscle spasm and moderately reduced ROM – both objective findings based on physical examination." *Doc. 15* at 11 (citing Oct. 14, 2014 visit, AR at 425-26). While

ALJ Richter did not mention these two findings specifically, she did mention this office visit in relation to her evaluation of Dr. Fury's opinions. *See* AR at 21. The ALJ noted that "[i]n her October 14, 2014 progress note, Dr. Fury indicated the claimant could return to work part time, and did not indicate any further specific functional limitations." AR at 21 (citing AR at 426). The note ALJ Richter refers to is on the same record as the musculoskeletal exam findings Plaintiff references. *See* AR at 426. The Court finds that the ALJ adequately considered Dr. Fury's notes from this date.

Plaintiff argues that the ALJ cherry-picked evidence from Dr. Fury's treatment notes, omitting evidence that would support a finding a disability. *Doc. 15* at 12. It is clear to the Court that ALJ Richter spent more time on the treatment notes to which Plaintiff objects in an effort to support her conclusions regarding the weight she gave to Dr. Fury's opinion. For example, the ALJ described in detail why she found Dr. Fury's opinion was "inconsistent with her progress notes . . . ." AR at 21 (citing AR at 426 and describing Oct. 14, 2014 progress note from Dr. Fury indicating Plaintiff could not return to work, but not recording "specific functional limitations"), 21 (comparing AR at 446-48 and noting Dr. Fury's opined limitations that Plaintiff could lift/carry "less than 10 pounds even occasionally, walk only short distances, and sit less than 2 hours" with AR at 565 and noting Dr. Fury's progress report that Plaintiff "was doing much better, helping her husband at work, and taking care of her grandchildren a few days a week"). She also described in detail why she found that "Dr. Fury's limitations appear to be a restatement of [Plaintiff's] own report of her limitations, as Dr. Fury provides no clinical findings to support the limitations." AR at 21. For example, Dr. Fury noted that Plaintiff "could sit for less than 2 hours in an 8-hour day because she had [pain scale level] 9 pain if in any

position greater than 2 hours, which was clearly [Plaintiff's] statement" and was not supported by any clinical findings on the Medical Source Statement. *See* AR at 21 (citing AR at 646-48).

Plaintiff points out various treatment notes to demonstrate that substantial evidence also supports giving more deference to Dr. Fury's opinions. *See Doc. 15* at 12. As the Commissioner contends, however, Plaintiff is simply asking the Court to reweigh the evidence, a task the Court may not do. *See Doc. 17* at 6, 10; *see also Lax*, 489 F.3d at 1084.

With respect to the sixth factor, Plaintiff emphasizes that she used to work for Dr. Fury, which should weigh in favor of giving her opinions more deference. *Doc. 15* at 11. The ALJ did consider this fact, though, and apparently did not think that it was enough to give Dr. Fury's opinions more deference. *See* AR at 16. Ultimately, the Court finds that the ALJ's decision to give Dr. Fury's opinions partial weight is well-reasoned and supported by substantial evidence.

## B.     Ms. Frock and Plaintiff's inability to afford treatment

Plaintiff contends that the ALJ erred in discounting the opinion and limitations opined by Ms. Rebecca Frock, M.A., LPCC, who submitted a letter and Medical Source Statement in June 2016. *See Doc. 15* at 13-15; AR at 545-53. Although Ms. Frock is a "treating source," she is not an "acceptable medical source" and, therefore, her opinion is not entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Ms. Frock stated in her letter that she had seen Plaintiff for counseling since September 23, 2015. AR at 545. While Plaintiff began counseling "to work on

communication within her marriage[, t]he course of counseling shifted in March [2016] to specifically address her Post Traumatic Stress Disorder" (PTSD). AR at 545. Ms. Frock explained that Plaintiff's mental health symptoms stem from sexual abuse she experienced as a child and into adulthood. AR at 545. Ms. Frock mentioned that Plaintiff "has experienced dissociative episodes in which she has no memory of things that she has done." AR at 545. She recommended Plaintiff receive a neuro-psychiatric assessment to identify medication management options. AR at 545.

In her Medical Source Statement, Ms. Frock stated that Plaintiff's diagnosis is PTSD, and she also experiences dissociative episodes and mood instability "as related to PTSD." AR at 546, 549. She opined that Plaintiff has marked limitations in her abilities to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) work in coordination with or proximity to others without being influenced by them; (7) complete a normal workday or workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (8) interact appropriately with the general public; (9) get along with coworkers and peers without distracting them or exhibit behavioral extremes; (10) respond appropriately to changes in the work setting; (11) be aware of normal hazards and take appropriate precautions; and (12) travel in unfamiliar place or use public transportation. AR at 549-53. She opined that Plaintiff has moderate limitations in her abilities to (1) understand and remember very short and simple instructions; (2) carry out very short

and simple instructions and (3) set realistic goals or make plans independently of others. AR at 549-53.

ALJ Richter gave Ms. Frock's opinion "little weight," because as a counselor, she is not an acceptable medical source who may establish a diagnosis. AR at 13, 21. Moreover, "[n]either treating physician Dr. Fury nor consultative psychologist Dr. Flynn endorsed Ms. Frock's diagnosis of PTSD." AR at 21. The ALJ stated that Plaintiff "did not follow Ms. Frock's recommendation that she obtain a neuro-psychiatric assessment to identify possible options for medication management, and . . . [had] stopped seeing Ms. Frock." AR at 21. In fact, the ALJ noted, Plaintiff was "not receiving any mental health treatment, either counseling or medication[,]" and found that her "lack of treatment is inconsistent with Ms. Frock's opinion regarding the severity of [Plaintiff's] mental impairments and resulting limitations." AR at 21. The ALJ also questioned Ms. Frock's attribution of Plaintiff's limitations to her history of childhood sexual abuse, where Plaintiff "was able to perform substantial gainful activity as an adult." AR at 21.

Plaintiff takes issue with the ALJ's decision to give Ms. Frock's opinion little weight and, accordingly, the failure to incorporate the opined limitations into Plaintiff's RFC. *Doc. 15* at 14-15. Plaintiff contends that the record supports Ms. Frock's findings regarding dissociative episodes and depression. *Id.* at 15. She states that her June 3, 2016 emergency room visit was the product of a dissociative episode, but there are no notes in the record to support this contention. *See id.*; *see also* AR at 649-57. She argues that Dr. Fury's treatment notes support a finding that she has limitations from depression, but she does not demonstrate that Dr. Fury's treatment of her depression supports the very extreme limitations that Ms. Frock opined. *See Doc. 15* at 15.

15

Plaintiff argues that ALJ Richter improperly relied on her decision to stop mental health treatment because she wrote a June 25, 2015 letter stating that she could not afford such treatment. *See id.* at 15-16 (citing AR at 165). However, at the hearing, Plaintiff told the ALJ that she stopped seeking counseling not due to finances, but because counseling was making her feel more depressed. AR at 59-60. She further testified that she does not take any medications for her mental health issues because she had abused opiates. AR at 59.

The Court finds no grounds to remand based on the ALJ's treatment of Ms. Frock's opinion.[4]

### C.    Dr. Flynn

Plaintiff next contends that the ALJ improperly disregarded the GAF rating of 45 that Dr. Susan Flynn, Ph.D., assigned after she performed a psychological consultative evaluation of Plaintiff on April 19, 2015. *See Doc. 15* at 17-19; *see also* AR at 533-36. The ALJ gave Dr. Flynn's GAF rating little weight for several reasons: GAF ratings "represent snapshots of a claimant's ability to function at a given moment and can vary greatly from day to day and from provider to provider"; the "GAF rating is unsupported by [Dr. Flynn's] observations on examination during which she noted good eye contact, organized thought process, intact recent memory, judgment and impulse control within normal limits, and steady attention"; and Dr. Flynn's observation that Plaintiff

---

[4] In her reply brief, Plaintiff argues that it was error for the ALJ to question Ms. Frock's attribution of Plaintiff's limitations to her history of childhood sexual abuse, where Plaintiff "was able to perform substantial gainful activity as an adult." AR at 21; *see also Doc. 18* at 5-6. Plaintiff argues that "[t]his line of reasoning is directly contrary to medical knowledge regarding the symptoms of PTSD, which can surface many years after the trauma." *Doc. 18* at 5-6. However, Plaintiff has not been diagnosed with PTSD by an acceptable medical source. Thus, the Court finds no reversible error in the ALJ's statement.

demonstrated "exaggerated affect throughout the interview, which appears to undermine the severity of the GAF rating she assigned." AR at 22. Plaintiff attacks each of these reasons.

First, Plaintiff argues that "other evidence supports the GAF rating." *Doc. 15* at 18. Plaintiff cites, however, to the limitations opined by Ms. Frock, which the Court has held the ALJ properly discounted. *See id.* Second, Plaintiff argues the ALJ erred in discounting the GAF rating due to the observation regarding Plaintiff's "exaggerated affect," because this "does not necessarily equate to a patient who is malingering." *Id.* at 19 (explaining that an exaggerated affect means "an overly dramatic/startled response to stimuli and is a hallmark of a personality disorder and PTSD") (citation omitted). Again, however, Plaintiff equates the "exaggerated affect" observation to PTSD, which no acceptable medical source diagnosed.

Finally, Plaintiff cites other observations from Dr. Flynn's report and argues that they represent substantial evidence that gives weight to the GAF rating. *Id.* Plaintiff ignores that the ALJ mentioned the majority of the cited evidence earlier in her decision. *See* AR at 15. The Court finds the ALJ's reasoning is adequate and will not remand on this issue.

### D.     Dr. Tendler

Plaintiff next contends that the ALJ erred in failing to incorporate a moderate limitation into her RFC that Dr. Tendler opined. *Doc. 15* at 20. Dr. Tendler, a non-examining state agency psychological consultant, opined in relevant part that Plaintiff has a moderate limitation in her ability to interact with the general public. AR at 108. Dr. Tendler further explained that Plaintiff "is capable of interacting with the public on an

infrequent basis. Less than significant limitations." AR at 108. ALJ Richter also found that Plaintiff has moderate limitations in her ability to interact with others (AR at 15), and she incorporated this into the RFC by limiting Plaintiff to simple, routine, and repetitive work [with] occasional interaction[s] with members of the public" (AR at 16).

Plaintiff contends that the RFC's limitation to *occasional* interactions with the public does not adequately account for Dr. Tendler's note that she should have *infrequent* interactions with the public. *Doc. 15* at 20. The Commissioner avers that "the ALJ explained her reasoning for finding that Plaintiff was not quite as socially limited as indicated by Dr. Tendler [] based on [her] generally normal social abilities during her examination with Dr. Flynn, and her ability to care for her grandchildren, help her husband with his job, and her improvement on medication." *Doc. 17* at 15 (citing AR at 15, 20, 565). The Court finds the Commissioner's argument to be an impermissible post hoc explanation.

Regardless, the Court finds that any discrepancy is harmless error. The VE testified that the three jobs the ALJ found Plaintiff can perform – table worker (DOT No. 739.687.182), inspector (DOT No. 741.687.010), and circuit board inspector (DOT No. 726.684-110) – are all unskilled. *See* AR at 24, 71.

> Unskilled work generally requires only the following: (1) 'understanding, remembering, and carrying out simple instructions'; (2) 'making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) 'responding appropriately to supervision, coworkers and usual work situations'; and (4) 'dealing with changes in a routine work setting.'

*Knight v. Colvin*, No. CV 15-0882 KBM, 2016 WL 9489144, at *4 (D.N.M. Dec. 5, 2016) (quoting *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (quoting SSR 96-9p,

1996 WL 374185, at *9 (July 2, 1996))). "Under this definition, unskilled work does not require *any* interaction with the general public, much less that which is 'occasional'" or "infrequent." *See id.* (citation omitted). Therefore, even if the ALJ had erred in failing to explain the difference between "infrequent" and "occasional" interactions with the public, the distinction is meaningless where the ALJ specified three unskilled jobs with no requirement of public interaction.

### E. Subjective Symptoms

Plaintiff contends that the ALJ erred in assessing her subjective complaints of pain pursuant to SSR 16-3p. *Doc. 15* at 21-22. Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

Here, ALJ Richter summarized Plaintiff's testimony and self-reports regarding the pain and other symptoms she experiences due to her impairments. AR at 16-17, 19. The ALJ also thoroughly reviewed the evidence of record and concluded that Plaintiff's allegations of "a high degree of back pain [are] not consistent with the very conservative treatment she has received." AR at 19.

At the second step, ALJ Richter discussed:

Daily activities: The ALJ reviewed Plaintiff's account of her daily activities and noted that she "indicated a fairly wide range of activities on the Function Report dated November 6, 2014, consistent with [the RFC] finding." AR at 19 (citing AR at 261-71). The ALJ summarized Plaintiff's testimony regarding her activities of daily living, which present a considerably more limited view of her abilities. *See* AR at 16-17; *see also* AR at 32-77.

The location, duration, frequency, and intensity of pain or other symptoms: The ALJ reviewed Plaintiff's allegations of pain, including her testimony that "[s]he is in level 8 pain in her lower back, right side." AR at 16. The ALJ also noted a session of physical therapy in which Plaintiff "informed the physical therapist that her pain level was 10 out of 10, at which point the therapist offered to call an ambulance." AR at 18 (citing AR at 620). After "[t]he therapist educated [Plaintiff] 'on pain scale and the appropriate

biological reaction to a true 10/10,'" Plaintiff "verbalized understanding and maintained that her usual pain was 10/10." AR at 18 (citing AR at 620).

Medications and treatment: Relevant to Plaintiff's back pain, the ALJ discussed the fact that Plaintiff stopped taking opiate medications and muscle relaxers because of addiction issues. *See* AR at 16, 19. The ALJ noted that Dr. Fury "has not provided any treatment for [Plaintiff's] back pain, other than two referrals for physical therapy over the course of almost three years and [the now discontinued] prescriptions for pain medications and muscle relaxers . . . ." AR at 21.

Measures Plaintiff uses to relieve pain and symptoms: The ALJ noted that Plaintiff currently "takes Tylenol, TENS unit, heating pad, [and] an ointment" for pain, which "help temporarily, [but] not for long." AR at 17.

Plaintiff argues that while the ALJ emphasized the conservative treatment she has received, the record shows a variety of attempts she has made to find pain relief, "including undergoing MRIs, injections, and medications." *Doc. 15* at 21. The ALJ acknowledged these attempts and others. *See* AR at 17 (discussing MRI, injections, opiate pain medication, muscle relaxer, physical therapy), 18 (discussing MRIs, acupuncture, pain medications, physical therapy). Plaintiff also asserts that "[t]he ALJ's analysis is contrary to the record, as it does not actually address the evidence of [her] pain." *Doc. 15* at 21. For example, Plaintiff states that her medical providers recorded her complaints of "back pain at every visit, and made supporting, objective findings of decreased ROM, muscle spasm, tenderness, [and] decreased stride length . . . ." *Id.* at 21-22 (citations omitted).

Yet, the ALJ neither ignored Plaintiff's subjective complaints nor the providers' observations; rather, the ALJ found that substantial evidence overwhelmed Plaintiff's complaints of severe pain and the limitations she claimed resulted from it. Specifically, the ALJ noted that "imagining studies have shown degenerative changes in [Plaintiff's] lumbar spine, but no central or neuroforaminal stenosis or other acute findings." AR at 19. She stated that "orthopedic specialist Dr. Santos asked [Plaintiff] to return if her back pain persisted, but she did not return to him or seek treatment from another specialist." AR at 19. She found that "[p]hysical examinations have not shown hard neurological findings consistent with lumbar disc or joint disease, such as muscle weakness or atrophy, muscle spasms,[5] loss of sensation, or positive straight leg raising." AR at 19.

Plaintiff cites to *Hamlin v. Barnhart*, where the Tenth Circuit found that "the ALJ's determination that [the plaintiff's] allegations of disabling pain were of limited credibility is not supported by substantial evidence." 365 F.3d 1208, 1222 (10th Cir. 2004). The Court finds here, though, that the ALJ used the correct legal standard to evaluate Plaintiff's allegations of pain and supported her findings with substantial evidence. Thus, the Court declines to remand on this issue.

---

[5] Plaintiff asserts that several medical records contain notes of findings of decreased range of motion and stride length, as well as complaints of muscle spasms and tenderness. However, at least three of the cited records do not support Plaintiff's assertion. *See Doc. 18* at 9 (citing AR at 425-26 (noting tenderness and moderately reduced range of motion but *not* muscle spasms), 431-32 (noting that Plaintiff has *not* complained of tenderness or muscle spasms), 444 (MRI record), 456-57 (this visit was primarily to address Plaintiff's depression), 618 (this visit was to address Plaintiff's hip pain and does not note ROM, stride length, muscle spasms, or tenderness)). Regardless, the Court finds that the ALJ adequately summarized evidence relevant to Plaintiff's complaints of pain.

**F.      VE Testimony and Significance Analysis**

Finally, Plaintiff alleges that the ALJ made two Step Five errors. First, Plaintiff points out that one of the three jobs the ALJ identified, that of inspector (DOT No. 741.687-010), represents light work, rather than the sedentary work specified in her RFC. *See Doc. 15* at 23-24. The Commissioner concedes that this is true. *Doc. 17* at 18. The Court agrees that the ALJ erred in accepting the position of inspector without asking the VE to explain the discrepancy.

The ALJ also found that Plaintiff can perform the jobs of table worker (13,900 positions) and circuit board inspector (12,000 positions), which represent a total of 25,900 positions in the national economy. AR at 24. Relying on *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), Plaintiff contends that this case requires remand so that the ALJ may determine whether 25,900 jobs rises to a significant level in the economy. The Commissioner responds that the "*Trimiar* analysis is required where a [VE] identifies only regional jobs *and* the number of jobs identified is relatively small . . . ." *Doc. 17* at 19. The Commissioner argues that because the VE discussed (and the ALJ specified) national, rather than regional jobs, the *Trimiar* analysis is not implicated. *See id.* The Commissioner further contends that the number of jobs at issue here is not low enough to trigger a *Trimiar* analysis. *See id.*

While the Court agrees that the *Trimiar* decision dealt with jobs available in the regional economy, *see King v. Berryhill*, No. CIV 16-1147 KBM, 2018 WL 851358, at *13-14 (D.N.M. Feb. 12, 2018), the Court does *not* find that 25,900 jobs is so numerous as to affirm the decision where the ALJ did not consider the issue. As Judge Yarbrough said in a recent case, the fact that *Trimiar* may not be directly applicable "does not

mean that an ALJ's findings regarding the number of jobs existing in the national economy is beyond scrutiny. Rather, the issue remains as to whether the ALJ's finding is supported by substantial evidence." *Garcia v. Berryhill*, No. 1:16-CV-01266 SCY, 2018 WL 1620922, at *5 (D.N.M. Mar. 31, 2018). "Such a determination may overlap with considerations laid out in *Trimiar*, such as the 'reliability of the vocational expert's testimony.'" *Id.* (citing *Trimiar*, 966 F.2d at 1330).

The *Trimiar* Court identified "several factors courts may consider in evaluating" whether the number of regional jobs identified is "significant," "including: (i) 'the level of claimant's disability'; (ii) 'the reliability of the vocational expert's testimony'; (iii) 'the distance claimant is capable of traveling to engage in the assigned work'; (iv) 'the isolated nature of the jobs'; and (v) 'the types and availability of such work.'" *Sida v. Soc. Sec. Admin.*, 349 F. Supp. 3d 1149, 1164 (D.N.M. 2018) (quoting *Trimiar*, 966 F.2d at 1330 (internal quotation marks and citation omitted). Two of the factors concern the Court here.

First, Plaintiff has shown that the VE's testimony was not entirely reliable due to the error regarding the position of inspector. Second, the ALJ did not touch on the availability of the remaining two jobs. Because the number of remaining jobs is relatively low, and because it is not clear whether the jobs "exist[] in significant numbers either in the region where [Plaintiff] lives or in several regions of the country[,]" 42 U.S.C. § 423(d)(2)(A), the Court will not affirm the ALJ's decision. *See also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding that "25,000 jobs meets the statutory standard" where it is clear that jobs are available "in several regions of the country").

**V.     Conclusion**

Because the ALJ erred in accepting the position of inspector, and because the remaining two jobs listed represent only 25,900 positions in the national economy without reference to regional availability, the Court will remand for the ALJ to make a finding about whether that number is significant.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 15*) is **granted**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent